UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEWS FOR JESUS, INC., a California non-profit corporation, and ROBERT WERTHEIM, as an individual and as an employee of JEWS FOR JESUS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CITY COLLEGE OF SAN FRANCISCO, and CHARLTON FOTCH, as an individual, <br><br> Defendants. <br> _____ / | No. C 08-03876 MHP <br><br> **MEMORANDUM & ORDER** <br><br> **Re: Plaintiffs' Motion for Preliminary Injunction** |

Plaintiffs Jews for Jesus, Inc., and Robert Wertheim (collectively "plaintiffs") allege that the San Francisco Community College District and one of its officers (collectively "defendant" or "the District") violated Wertheim's constitutional rights, including his free speech rights under the United States and California constitutions. Now before the court is plaintiffs' motion for a preliminary injunction. Having considered the parties' arguments and for the reasons stated below, the court enters the following memorandum and order.

BACKGROUND

I.   The Parties

Robert Wertheim, an employee of Jews for Jesus, Inc., holds sincere religious beliefs compelling him to share his religious message with other persons.[1] Wertheim has attempted to distribute literature at the City College of San Francisco (CCSF) Ocean Campus, one of the District's several campuses. The District receives funding through bond initiatives funded by the voters of San Francisco. See "Bond Projects" page at www.ccsf.edu (last visited Dec. 9, 2008).[2]

## II. Incidents on Campus

On multiple occasions in 2007 and early 2008, security officers or employees of the District approached Wertheim while he was distributing literature on campus and demanded that he show a permit to distribute literature or desist from doing so. On these occasions, Wertheim left the campus. On April 3, 2008, Wertheim was again peacefully distributing literature at the Ocean Campus. Campus police officers approached Wertheim, telling him that he could not distribute literature without a permit and that he would be arrested if he did not stop. On that occasion, Wertheim apparently refused to comply. The campus police officers placed him under citizen's arrest, placed him in handcuffs, and took him to the campus police department. The officers confiscated Wertheim's literature, as well as his wallet, watch, and wedding band, and detained him for approximately eighty minutes. Wertheim was then transferred to the San Francisco county jail, where he was placed in a holding cell and held for more than three hours. On the following day, the charges against Wertheim were dropped.

## III. The District's Regulations

At the time of the events described above, the District had in place certain "Regulations Governing Solicitation at CCSF-Ocean Campus" ("the regulations").[3] The regulations state that they were "established to grant permission to off-campus organizations and individuals to table, distribute literature, and/or post flyers." They provided, inter alia, that any such individual (referred to as a "solicitor" in the regulations) must do the following:

> The solicitor must report to the office of the Associate Dean of Student Activities to fill out an Area request Form for tabling and/or distribution of literature. This form must be filled out at least five (5) working days in advance and not more than twenty (20) working days in advance of the requested activity. Requests that vary from this scheduling pattern will be approved by the Student Activities Office on a case-by-case basis depending on the needs of the organization/individual and/or the needs of the College. Permission will be granted on a space available basis. During the activity, a copy of this form must be in the possession of the solicitor at all times.

The regulations also stated "The designated area for solicitors is RAM PLAZA located between Smith Hall and the Student Union. Assignment of the area is at the discretion of the Student

2

1  Activities Office. The solicitor must REMAIN in this specified area only." Additionally, the
2  regulations provided a code of conduct stating, among other things, that solicitors may not engage in
3  violence, harm persons or damage property, enter facilities without authorization, violate college
4  rules, or "[fail] to comply with the directions of College officials, staff, or campus police." CCSF
5  reserved the right to make unilateral modifications to the regulations and set out consequences for
6  any failure to comply with the regulations. The District also maintained "posting and distribution
7  guidelines" ("the posting guidelines") that pertained primarily to posting fliers on campus but also
8  restated the requirement that persons wishing to distribute literature first receive permission to do so.
9       The "area request form" ("form") provided by the regulations required a solicitor to provide,
10 among other things, his name, organization, address, phone number, driver's license or California
11 identification number, and purpose. It also stated, "Note: If distributing literature, please attach a
12 copy."

IV.  Procedural History

15      Plaintiffs filed suit on August 13, 2008. On the same date, plaintiffs filed the pending motion
16 for a preliminary injunction and motion to waive the posting of a bond for the preliminary
17 injunction. Defendant answered on September 3 and filed its opposition to the motion for
18 preliminary injunction on November 10. Plaintiffs filed their reply brief on November 15. On
19 December 4, the District filed a declaration with an attached exhibit, which counsel for the District
20 declared to be an amended set of regulations, posting guidelines, and "sign in form" that "have
21 already been put in place . . . at the Ocean Avenue campus." Docket No. 25 (Darmagnac Dec.) ¶ 3,
22 Exhs. A-C. The court heard oral argument on December 15, 2008.

LEGAL STANDARD

25      "A preliminary injunction is a provisional remedy, the purpose of which is to preserve status
26 quo and to prevent irreparable loss of rights prior to final disposition of the litigation." Napa Valley
27 Publ'g Co. v. City of Calistoga, 225 F. Supp. 2d 1176, 1180 (N.D. Cal. 2002) (Chen, Mag. J.), citing

3

Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1422 (9th Cir.1984). In light of these considerations, a plaintiff seeking preliminary injunctive relief must demonstrate either: "(1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits [have been] raised and the balance of hardships tips sharply in [the plaintiff's] favor ." Southwest Voter Registration Educ. Project v. Shelley, 344 F.3d 914, 917 (9th Cir. 2003) (en banc) (per curiam), citing Clear Channel Outdoor Inc. v. City of Los Angeles, 340 F.3d 810, 813 (9th Cir. 2003). A plaintiff may also argue that the public interest favors issuance of a preliminary injunction. Southwest Voter, 344 F.3d at 917.

The components of these two tests operate on a sliding scale or "continuum." Id. at 918. Consequently, "the less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and balance of hardships tip in their favor." Id.; see also Miller v. California Pac. Med. Ctr., 19 F.3d 449, 456 (9th Cir. 1994) (en banc).

## DISCUSSION

Arguing that the Ocean Campus is a public forum, plaintiffs move for the court to preliminarily enjoin two specific District practices carried out pursuant to the original regulations: (1) requiring advance permission of a college official to distribute literature; and (2) designating only one part of the Ocean Campus as a free speech zone. The District does not defend the constitutionality of these provisions. Rather, it has submitted amended regulations, posting guidelines, and form, which it asserts have rendered the motion for injunctive relief moot.

I.   Threshold Questions

Two threshold questions must be answered affirmatively before the court undertakes an analysis of plaintiffs' likelihood of success and injury. The first threshold question is whether plaintiff's speech is protected speech under the First Amendment of the United States Constitution

4

or California's Liberty of Speech Clause. There can be no doubt that the distribution of free religious and political literature is precisely the sort of speech protected by these constitutional provisions. See United States v. Grace, 461 U.S. 171, 176 (1983) (holding that leafleting is an expressive activity protected by the first amendment). Defendant does not argue to the contrary.

Nor does defendant dispute that the CCSF Ocean Campus is a public forum, the second threshold inquiry. U.S. Supreme Court case law applies differing standards to traditional and designated public forums on the one hand and limited or non-public forums on the other. See Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37 (1983). Quintessential public forums include public parks, streets, and other places which by long tradition or government policy have been devoted to assembly and debate. See id. at 45. The definition of what constitutes a public forum is broader for the purposes of California's Liberty of Speech Clause than it is for First Amendment purposes. See Kuba v. 1-A Agricultur Ass'n, 387 F.3d 850, 856 (2004). The test under California law is "whether the communicative activity is basically incompatible with the normal activity of a particular place at a particular time." Id. at 857. A primary purpose of a college or university is to contribute to the exchange of ideas. As defendant impliedly concedes, sidewalks and plazas on a publicly-supported college campus constitute a public forum under either standard.[4]

II. Likelihood of Success

    A. Prior Restraint/Licensing

Under the original regulations, an individual may not "table," distribute literature, or post fliers at the Ocean Campus without first getting permission from the office of the Associate Dean for Student Activities. Permission must be sought at least five working days in advance of the date upon which one desires to engage in the above-mentioned expressive activities, unless the Student Activities office decides to waive the requirement. The solicitor must submit his materials in advance of approval, and no standards governing the approval or disapproval of a request for permission are articulated.

5

Plaintiffs argue that the requirement that an individual get permission in advance to engage in expressive activities is an unconstitutional prior restraint under the First Amendment. They are correct. The facts of the case at bar parallel those of the seminal case of Lovell v. Griffin, 303 U.S. 444 (1938). In Lovell, the city of Griffin, Georgia, required that all persons wishing to distribute literature first obtain permission from the city manager. Id. at 447-448. The city's ordinance had articulated no standards to guide the city manager's exercise of discretion in determining which literature to approve and which to disapprove. See id. In that case, the Supreme Court struck down the ordinance, finding that it "str[uck] at the very foundation" of First Amendment freedoms by allowing licensing and censorship. Id. at 451. In light of Lovell and its progeny, it could hardly be plainer that the District's regulations constitute a prior restraint on expressive activity. They allow college officials to review literature before it is distributed and to deny permission to distribute it at their unfettered discretion. This scheme might properly be challenged as a prior restraint, a content-based regulation, or an exercise of unfettered discretion. Under any of these doctrinal rubrics, the result is the same: these provisions would be subjected to strict scrutiny.

Under the strict scrutiny standard, the District must show that the regulations are necessary to achieve a compelling government interest. See Adarand Constructors v. Pena, 515 U.S. 200, 2002 (1995). As noted, the District has not argued that this standard is met, and considering the high burden, it is unlikely that defendant could meet it.

It is highly likely, therefore, that plaintiffs would succeed in demonstrating that the original regulations are facially unconstitutional under the First Amendment to the extent that they require prior approval for expressive activity at the discretion of a college official.

B. Limitation to Ram Plaza

Plaintiffs further challenge the District's restriction of solicitors to Ram Plaza, arguing that it is an unconstitutional place restriction. Restricting expressive activity to specific areas in a public forum is not per se unconstitutional. See Heffron v. ISKON, 452 U.S. 640 (1981) (allowing a state fair to restrict religious missionaries to specific areas of a fairgrounds). Under both the U.S. and California constitutions, permissible restrictions on expression in a public forum, including time,

place or manner restrictions, must be (1) content-neutral, (2) narrowly tailored to serve an important government interest, and (3) leave open ample alternative channels for the communication of the message. Kuba at 856.

There is, at this time, insufficient evidence on the record to determine whether the District's designation of Ram Plaza as a free speech zone is a permissible place restriction. At oral argument, the parties, who had not yet met and conferred regarding the possibility of settlement, agreed to do so. If those discussions are unsuccessful, the parties may thereafter file admissible evidence to facilitate the court's determination of whether a preliminary injunction with respect to the restriction to Ram Plaza will issue.

### III.   Irreparable Injury

To obtain an injunction, a plaintiff must demonstrate either (1) a likelihood of success on the merits coupled with the possibility of irreparable injury or (2) that serious questions going to the merits have been raised coupled with a showing that the balance of hardships tips sharply in the plaintiff's favor. Southwest Voter at 917. Since plaintiffs have demonstrated a likelihood of success in prevailing in their challenge to the permit scheme, only the possibility of irreparable harm need be shown. "It is undisputed that loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976). Plaintiffs have therefore made a strong showing that their challenge to the former regulations would merit injunctive relief. This does not end the analysis, however, because the District has subsequently amended its policies.

### IV.   The Amended Policies

The District contends that an injunction should not issue, because the District has already put into place, at all of its campuses, an amended set of regulations, posting guidelines, and form that no longer include the permit requirement. See Darmagnac Dec., Exhs. A-C.[5] The amended regulations,

7

posting guidelines, and form appear to remedy the defects pertaining to the challenged permit requirement.[6] The amended guidelines state:

> Before distributing literature, or posting flyers, all solicitors shall report to the office of the Associate Dean of Student Activities to sign in to notify the Dean of the solicitor's presence on campus, and to acknowledge receipt of these regulations. This notice does not involve any application or approval process, and therefore, the ability to use the designated area cannot be denied. This notice is only intended to provide CCSF with knowledge of the community member's presence on campus so that CCSF can notify the appropriate members of its staff whose services might be needed or impacted by the use of the designated area.

Id., Exh. A.

Plaintiffs note that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of jurisdiction to determine the practice's legality. See City of Mesquite v. Alladin's Castle, Inc., 455 U.S. 283, 289 (1982). They also point to the fact that it took the District approximately eight months to revise its guidelines (such revision having only changed a few paragraphs) as evidence that the District has dragged its feet in remedying known problems with the regulations.

The District admits that voluntary cessation does not moot a challenge "unless the party asserting mootness meets the heavy burden of showing it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" Students for a Conservative America v. M.R.C. Greenwood, 378 F.3d 1129, 1131 (9th Cir. 2004), quoting Friends of the Earth, Inc. v. Laidlaw Environmental Svc., Inc., 528 U.S. 167, 189 (2000). However, courts have found defendants to have met this burden when defendants have not continued to assert the constitutionality of the challenged policies, have represented to the court that the challenged policies will not be reenacted, and have enacted compliant policies through a deliberative process. See, e.g., Students for a Conservative America at 1131 (finding First Amendment challenge moot where university had withdrawn challenged provisions and committed not to reenact them unless federal law changed); Jews for Jesus, Inc. v. Hillsborough County Aviation Authority, 162 F.3d 627 (11th Cir. 1998) (finding mootness in part because new policy was the result of substantial deliberation).

In this case, the District has not argued that the challenged policies are constitutional. In fact, it has amended those policies and has stated on the record that it has no intention of reenacting

8

those policies. See Docket No. 18 (Lee Dec.) ¶ 8. Moreover, the process of reviewing the policy began before the instant lawsuit was filed, and it was reviewed through a deliberative process involving the Associate Dean of Student Activities, the General Counsel, and the Chancellor. Id. ¶ 5. In short, the District appears to have cured the constitutional infirmities complained of by plaintiffs, and there is good reason to believe that the District will not reenact the unconstitutional restrictions. The court declines at this time to exercise its equitable power to issue an injunction.

Under the amended regulations, Wertheim and others may not be denied their right to distribute literature or engage in other expressive activities in Ram Plaza based on the content of their expression or any purported failure to obtain a permit.

CONCLUSION

For the foregoing reasons, plaintiffs' motion for a preliminary injunction with regard to the District's permit requirement is DENIED as moot. Such denial is WITHOUT PREJUDICE to renewal, should the District reenact the challenged or similar policies. Plaintiff's motion for a preliminary injunction with regard to the restriction to Ram Plaza is continued until the parties have made further evidentiary submissions to the court. Plaintiff's motion to waive the posting of a bond is GRANTED.

As discussed at oral argument, the parties SHALL meet and confer regarding a settlement of the outstanding issue or issues. No later than one week prior to the parties' next appearance, whether on the continued preliminary injunction motion or at a case management conference, they SHALL file a joint case management statement.

IT IS SO ORDERED.

Dated: January 12, 2009

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

9

**ENDNOTES**

1. Unless otherwise noted, all facts in parts I and II of this memorandum's "Background" section are drawn from the allegations of the verified complaint. <u>See</u> Docket No. 1. The District, in its preliminary injunction moving papers, does not contest plaintiffs' allegations pertaining to his interactions with the District. For the purposes of the present preliminary injunction motion, the court assumes the veractiy of the verified complaint's allegations.

2. The court takes judicial notice of the contents of the City College of San Francisco website. <u>See</u> Fed. R. Evid. 201.

3. All facts in part III of this memorandum's "Background" section are drawn from the exhibits to Docket No. 21-2 (Nelson Dec.) (regulations, posting guidelines, and area request form).

4. Plaintiffs and defendant both implicitly assume that the District's enforcement of its regulations constitutes government action for the purposes of First Amendment analysis, and the court does likewise.

5. The District also focuses in its briefing upon the fact that plaintiffs did not file a copy of the challenged regulations with its motion for a preliminary injunction. Plaintiffs corrected this oversight in their reply, and the District's subsequent filing of amended regulations that are substantially similar to the original regulations filed with plaintiffs' reply make it plain that the District was fully aware of which of its policies were being challenged. Plaintiffs' failure to file a copy of the regulations with their motion did not prejudice the District.

6. The court notes that the amended "sign in form" still includes a signature line for the Associate Dean of Student Activities. As the stated purpose of the form is to inform the college of the solicitor's presence and verify the solicitor's receipt of a copy of the college's policies, it is unclear why such signature line remains. To be clear, were the District to assert a failure of a solicitor to obtain a signature of a college official as a reason for excluding the facilitator from carrying out his expressive activity, there would be grounds to reevaluate whether the amended regulations have actually dispensed with the permit requirement.